UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| JOSE RIVERA,                                        : | |
| :| |
| Plaintiff,                                   : | |
| : | |
| v.                                                                : | Civil Action No.: _____ |
| : | |
| APPFOLIO, INC.,                                  : | |
| : | |
| : | |
| Defendant.                                  : | |

## COMPLAINT

**COMES NOW** the Plaintiff, **JOSE RIVERA**, by counsel, and as for his Complaint against the Defendant, he alleges as follows:

## INTRODUCTION

1. This is an action for actual, statutory, and punitive damages, costs and attorney's fees brought against Defendants pursuant to 15 U.S.C. §§ 1681a–x, the Fair Credit Reporting Act ("FCRA").

2. Congress enacted the FCRA out of concerns that consumer reporting agencies ("CRAs") were not adequately carrying out their responsibilities to report accurate information about consumers. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA in 1970 to ensure the "confidentiality, accuracy, relevancy, and proper utilization" of credit reports. 15 U.S.C. § 1681(b).

3. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, the most fundamental of which is the requirement that CRAs "shall follow

reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

4. Every CRA that provides a consumer report is bound by the maximum possible accuracy requirement, regardless of whether the report is going directly to the ultimate user or an intermediary reseller who will later provide the report to the user. *See id.*

5. Plaintiff applied for housing in Florida around the beginning of May, 2018. The prospective landlord obtained a consumer report about Plaintiff from Defendant around that same time. The report Defendant furnished to the landlord inaccurately attributed to Plaintiff criminal history of a different Jose Rivera.

6. Plaintiff is a retired police officer, and has no criminal history.

7. Defendants's report branded Plaintiff a repeat offender, inaccurately attributing to him 11 criminal charges of varying degrees.

8. Plaintiff brings an individual claim against Defendant for violations of 15 U.S.C. § 1681e(b). Plaintiff has no criminal history, yet Defendant reported to the potential landlord that Plaintiff had a trove of convictions. That error caused Plaintiff to lose out on the rental, and humiliated and embarrassed the former police officer.

9. Alternatively, Defendant defamed Plaintiff to the landlord under Florida common law. Defendant communicated to Plaintiff's potential landlord that Plaintiff was a criminal, and those statements were false.

10. Branding Plaintiff a repeat offender caused injury to Plaintiff's reputation, causing him monetary and emotional harm.

## JURISDICTION AND VENUE

11. The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331. The Court has pendent jurisdiction over Plaintiff's state-law claim.

12. The Court also has jurisdiction under 28 U.S.C. § 1332. Plaintiff is a resident of Florida, while Defendant has its principal place of business in California.

13. As a result of Defendant's conduct, Plaintiff has suffered more than $75,000 in actual damages to his reputation. He is also entitled to punitive damages of $350,000.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District and Division.

## PARTIES

15. The Plaintiff is a natural person and "consumer" as protected and governed by the FCRA.

16. Defendant APPFOLIO, INC. is a Delaware Corporation doing business in the State of Florida.

17. Instant Approlio is a "consumer reporting agency" as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

## STATEMENT OF FACTS

18. Plaintiff applied to rent a home in Florida.

19. In connection with Plaintiff's rental application, the prospective landlord requested Plaintiff's background report from the Defendant Appfolio.

20. The report that Defendant furnished to the landlord included criminal history information that did not belong to the Plaintiff. Instead, the report concerned a different individual who was entirely unrelated to the Plaintiff and that had a significant criminal history, including multiple misdemeanor convictions.

21. The report was grossly inaccurate. While Plaintiff is a retired police officer and has no criminal history whatsoever, the report contained multiple entries of criminal history from the Commonwealth of Virginia.

22. Discovery will show Defendant obtained the records that it reported about the Plaintiff by using an internally developed computer program to crudely "webscrape" the information from the Internet as a way to save money rather than sending people to the courts to retrieve and copy the actual records.

23. In choosing to obtain the records that it reported about the Plaintiff by webscrape, the Defendant was unable to obtain all of the true offender's identifying information and compare it to the information Plaintiff supplied to the landlord.

24. Such inaccuracies are apparent from the face of the report, and the report attributes to Plaintiff criminal history of two individuals who themselves are obviously not the same person—Jose Santos Rivera and Jose Noe Rivera.

25. Defendant could have obtained complete information about the true offenders had it gone to the courthouse and requested a paper copy of the court file.

26. In creating and furnishing Plaintiff's consumer report, the Defendant failed to follow reasonable procedures to assure that the report it furnished was of the maximum possible accuracy.

27.     When the Plaintiff's report was published, Defendant knew its procedures to generate the report were not only unreasonable, but that there was a substantial possibility that the use of these "loose matching" procedures could return criminal records that were not properly attributable to the Plaintiff.

28.     The Defendant intentionally chose to loosely match the criminal records—risking the damage that occurred to the Plaintiff here—as a cost-saving mechanism.

29.     The Defendant's failure to follow reasonable procedures to assure that its reports contained maximally accurate information was a substantial factor in the rejection of Plaintiff's rental application. Plaintiff was forced to attempt to prove a negative—that he was not a criminal—and to persuade the landlord that the charges did not belong to him.

30.     The Plaintiff experienced embarrassment and humiliation when denying the alleged criminal charges since he had lived a life in compliance with law and was a dedicated police officer who had spent his career in public service and law enforcement.

31.     At all times pertinent to this Complaint, Defendant's conduct regarding the preparation of Plaintiff's consumer report was willful and carried out with reckless disregard for the Plaintiff's rights as set forth under the FCRA. By example only and without limitation, Defendant's conduct was willful because it was intentionally accomplished through intended procedures and because Defendant's loose matching procedures do not constitute reasonable procedures to assure the maximum possible accuracy in the report that it prepared.

32.     Defendant could drastically increase the accuracy of its reports by requiring strict matching identification—such as a full name, complete date of birth, and full Social Security Number match—before placing information into a consumer's report. Discovery will confirm

that Defendant elected not to use these more rigorous standards because it would decrease the speed with which it could prepare a consumer report and would increase its costs.

33. Defendant knew or should have known about its legal obligations under the FCRA. The plain language of the FCRA, the Federal Trade Commission's regulations, and the Consumer Financial Protection Bureau's regulations make these obligations clear.

34. Discovery will show Defendant has not, and does not, intend to modify its procedures to comply with § 1681e(b) of the FCRA because compliance would drastically increase its operating expenses.

35. Defendant acted consciously in breaching its known duties and, in doing so, violated the Plaintiff's rights under the FCRA.

36. At all times pertinent to this Complaint, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under Defendant's direct supervision and control.

37. Therefore, the Defendant's conduct was willful, rendering Defendant liable for actual and punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. § 1681n, in addition to reasonable attorneys' fees and costs.

38. In the alternative, Defendant's conduct was negligent, rendering it liable for actual damages in an amount to be determined by the jury pursuant to 15 U.S.C. § 1681o, in addition to reasonable attorneys' fees and costs.

## CLAIMS FOR RELIEF

### COUNT I – FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)

39.     Plaintiff restates the allegations in Paragraphs 4–7, 18–21, 25–29, and 31–34 as if set forth at length herein.

40.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report that it furnished regarding the Plaintiff.

41.     Because of Defendant's conduct, Plaintiff suffered actual damages, including but not limited to: increased cost of housing, loss of housing, loss of sleep, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

42.     Defendant's violation of 15 U.S.C. § 1681e(b) was willful, rendering it liable for statutory and punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

43.     Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs, and attorneys' fees from Defendant in an amount to be determined by the jury pursuant to 15 U.S.C. § 1681n and § 1681o.

### COUNT III – DEFAMATION *PER SE*
### Alternative Claim

44.     Plaintiff reiterates each of the allegations in Paragraphs 9–10, 18–20, and 31–32 as if set forth at length herein.

45.     Plaintiff expects that Defendant will defend this case in part by arguing that the FCRA does not apply to it. Plaintiff therefore asserts alternative claims of defamation and defamation *per se*.

46. Defendant published to Plaintiff's prospective landlord a report about Plaintiff that stated Plaintiff had multiple misdemeanor convictions. Those were statements of fact.

47. When Defendant made the statements to the landlord it either knew they were false or recklessly failed to determine their truth.

48. Stating to a third party that someone has multiple criminal convictions constitutes defamation *per se* under Florida law.

49. Such statements subjected Plaintiff to hatred, distrust, ridicule, contempt, or disgrace as to the potential landlord. This result is defamation *per se* under Florida law.

50. The statements in the report about Plaintiff were false, and the landlord was capable of understanding the meaning of the statements.

51. At the time Defendant made the statements to the landlord, it knew the statements were false or was at least negligent in attributing to Plaintiff the criminal history of strangers.

52. The statements were defamatory, as they tended to injure at least Plaintiff's reputation in the eyes of the community, or at least in the eyes of Plaintiff's potential landlord.

53. Defendant's statements to the landlord injured Plaintiff's reputation in the community, as well as causing him to suffer economic damages such as the loss of housing, increased costs of housing, and out-of-pocket costs.

54. Plaintiff also suffered emotional harm such as loss of sleep, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

55. Because Defendant made the false, defamatory statements knowing they were false or recklessly failing to check their accuracy, Plaintiff is entitled to punitive damages under Florida law.

## COUNT III – DEFAMATION
### Alternative Claim

56. Plaintiff reiterates each of the allegations in Paragraphs 9–10, 18–20, and 31–32 as if set forth at length herein.

57. Defendant published to Plaintiff's prospective landlord a report about Plaintiff that stated Plaintiff had lengthy criminal history.

58. The statements in the report about Plaintiff were false, and the landlord was capable of understanding the meaning of the statements.

59. The statements that Plaintiff was a convicted criminal were statements of fact.

60. At the time Defendant made the statements to the landlord, it knew the statements were false, or recklessly failed to verify them. Alternatively, Defendant was at least negligent in attributing to Plaintiff the criminal history of strangers.

61. The statements were defamatory, as they tended to injure at least Plaintiff's reputation in the eyes of the community, or at least in the eyes of Plaintiff's potential landlord.

62. Defendant's statements to the landlord injured Plaintiff's reputation in the community, as well as causing him to suffer economic damages such as the loss of housing, increased costs of housing, and out-of-pocket costs.

63. Plaintiff also suffered emotional harm such as loss of sleep, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

64. Because Defendant made the false, defamatory statements knowing they were false or recklessly failing to check their accuracy, Plaintiff is entitled to punitive damages under Florida law.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment for actual, statutory, and punitive damages against the Defendant; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate; equitable relief allowed by law; and any such other relief the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

        Respectfully submitted,
        **JOSE RIVERA**

By:      */s/ Craig C. Marchiando*
        Craig C. Marchiando
        Florida Bar No. 1010769
        **CONSUMER LITIGATION ASSOCIATES, P.C.**
        763 J. Clyde Morris Blvd., Suite 1-A
        Newport News, VA 23601
        Tel: (757) 930-3660
        Fax: (757) 930-3662
        Email: craig@clalegal.com

*Counsel for Plaintiff*